E-FILED
Monday, 20 June, 2005 05:46:46 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **Willetta E. Taylor, etc.** | : | |
| Plaintiff, | : | Case No.    05 CV 2078 |
| -vs- | : | **Plaintiff's First Amended Complaint for Money Damages** |
| **Carle Foundation Hospital, et al.** | : | **With Jury Demand** |
| Defendants. | : | |

Now Comes Plaintiff, Willetta E. Taylor, by and through counsel, James R. Greene, III & Associates, and hereby brings this action to obtain full and complete relief and to redress Defendants' wrongful and/or negligent acts described herein[1].

1.    Plaintiff is the duly and properly appointed and practicing Administratrix of the estate of Lloyd E. Taylor, deceased.

2.    Plaintiff was appointed the Administratrix of the estate of Lloyd Taylor by the Probate Court of Montgomery County, Ohio in that court's case number 344377.

3.    The Plaintiff brings the causes of action stated in this Complaint individually and as the personal representative of the decedent, Lloyd E. Taylor.

4.    This action seeks monetary, declaratory, injunctive, punitive and other equitable relief.

### JURSIDICTION AND VENUE

5.    Plaintiff invokes the diversity jurisdiction of this court pursuant to 28 U.S.C. §§1331, 1332, and 1337 and it exceeds the sum and value of $75,000.

---

[1] By this Amended Complaint, we are not asserting medical malpractice as defined by Illinois law. Rather, the torts are as specified herein.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that Defendants are residents of this district and this Court authority to exercise personal jurisdiction over the Defendants.

## PARTIES

7. Willetta E. Taylor ("Ms. Taylor") is the mother and personal representative of the deceased, Lloyd E. Taylor ("Mr. Taylor"), on whose behalf she brings the within action.

8. At all times relevant herein, Defendant Carle Foundation Hospital ("Carle") was and is an organization performing health services, is capable of being sued in this Court and is vicariously liable for the acts and/or omissions of their agent physicians.

9. At all times material herein, Defendant Dr. Steven H. Packard ("Dr. Packard") was an employee and/or agent of Defendant Carle and was acting within the course and scope of his employment and/or authority as an orthopedic surgeon on duty when Mr. Taylor arrived at Carle.

10. At all times material herein, Defendant Dr. Robert Dodson ("Dr. Dodson") was an employee and/or agent of Defendant Carle and was acting within the course and scope of his employment and/or authority as the attending physician on duty when Mr. Taylor arrived at Carle.

11. At all times material herein, Defendants John and/or Jane Does Medical Practitioners ("John and/or Jane Does") were employees and/or agents of Defendant Carle and were acting within the course and scope of their employment and/or authority.

## FACTS

12. On or about June 22, 2003, Mr. Taylor, a 21-year old male, was traveling with a female friend, Chrashona Goodwin, in southern Illinois around Effingham when he was separated from multiple cars in his party traveling to Hammond, Indiana from Ms. Goodwin's family reunion in Memphis, Tennessee.

13. Mr. Taylor and his group were traveling northbound along Interstate 57 in Jackson, Illinois.

14. Mr. Taylor had properly stopped off the highway/interstate on the side of the interstate near Effingham and was standing outside of one of the vehicles in their group when he was suddenly struck by a semi-truck driven by Donald Presson, who veered off the interstate going at highway speeds, causing Mr. Taylor to be thrown quite a distance down the highway.

15. Mr. Presson, a truck driver for Schneider National Carriers, Inc. (the largest privately owned trucking company in the United States) had also been traveling northbound along Interstate 57 when he suddenly, improperly and without

2

warning left his lane of travel and drove off the highway and struck Mr. Taylor.

16.     Upon impact, Mr. Taylor was thrown about seventy feet into the air and landed in a ditch, but was still conscious.

17.     Ms. Goodwin ran over to Mr. Taylor and screamed for help once she realized what had just occurred.

18.     Ms. Goodwin's aunt, Harietta Porter, who was the driver of the vehicle Mr. Taylor was standing alongside when Mr. Presson struck him with the semi-truck, called for emergency assistance.

19.     As Mr. Taylor attempted to crawl over to Ms. Goodwin, Ms. Goodwin noticed a large gash in his right leg, but did not see any other noticeable injuries.

20.     Ms. Goodwin noticed and believed that Mr. Taylor was in a lot of pain, but he was not saying anything.

21.      While they waited for emergency assistance to arrive, a passerby who also happened to be a nurse stopped to assist Mr. Taylor.  The lady and another passerby wrapped Mr. Taylor's right leg.

22.     Emergency airlift was dispatched to the scene where they found Mr. Taylor awake and alert.

23.     Because of his critical condition, Mr. Taylor was airlifted by helicopter and transported to Carle where, because of his extreme injuries and pain, it is alleged that he became very combative, was not able to be controlled, had to be restrained, and was not oriented in any fashion.

24.     Mr. Taylor was allegedly moving all extremities except for his mangled right lower extremity, which was now placed in a splint.

25.     It is alleged that Mr. Taylor did not appear to respond to any commands.

26.     The hospital staff, which included Dr. Dodson, elected to sedate Mr. Taylor, who was by this time in cardiovascular collapse, and then began efforts at resuscitating him.

27.     A chest x-ray demonstrated that Mr. Taylor had multiple rib fractures down the right side with a crushed right chest.

28.     Mr. Taylor was soon transported from the emergency room to the operating room for ongoing resuscitative efforts.

29.     Mr. Taylor also underwent an immediate amputation of his right leg, which was performed by Dr. Packard after he discussed the situation with Dr. Dodson.

30. After the amputation procedure, Mr. Taylor sustained a cardiac arrest in the operating room and ongoing resuscitative efforts were made after the completion of the amputation of Mr. Taylor's lower right leg.

31. Dr. Dodson assisted in these resuscitative efforts.

32. The resuscitation efforts, however, were unsuccessful, and Mr. Taylor was subsequently pronounced dead on June 23, 2003.

33. At the time of Mr. Taylor's arrival at Carle, he had on his possession his health insurance card and/or information.

34. Mr. Taylor's health insurance card indicated that he was covered under Willetta Taylor's insurance through United Health Care, and Ms. Taylor, Mr. Taylor's mother, was identified on the health insurance card as the contact person in case of an emergency.

35. Ms. Taylor was not contacted by anyone at Carle when Mr. Taylor was transported to Carle nor was she contacted prior to the amputation of Mr. Taylor's leg.

36. Mr. Taylor did not consent to having his leg amputated.

37. Carle and/or its agents were aware that Ms. Taylor was the contact person in case of an emergency involving Mr. Taylor, but failed to contact her on June 22, 2003.

38. Exhibit A attached and incorporated herein shows Carle's knowledge of Willetta Taylor, as she is listed as the subscriber under the insurance information section of Exhibit A.

39. Upon information and belief, Chrashona Goodwin, Mr. Taylor's friend, was identified by Defendants as the primary contact under the emergency contact section of Exhibit A even though Carle and/or its agents had no legitimate basis for believing her to be so.

40. Even after Mr. Taylor's body was returned to Dayton, Ohio, his hometown, for his funeral, Carle did not return Mr. Taylor's amputated leg, which further added to Ms. Taylor's grief and emotional distress over the loss of her only child.

41. Ms. Taylor has never been provided with an explanation as to why Mr. Taylor's amputated leg was not returned to Dayton along with the rest of his body.

**First Claim For Relief**
**Violation and/or Breach of Physician-Patient Privilege**

42. Plaintiff hereby realleges and incorporates by reference as if fully set forth herein the allegations of paragraphs 1 through 41 above.

43.     Defendants, without Mr. Taylor's consent and/or authority disclosed to a third party confidential medical information obtained by Defendants during the course of the physician-patient relationship.

44.     Defendants breached the physician-patient privilege by disclosing Mr. Taylor's nonpublic medical information to Ms. Goodwin while he received emergency treatment at Carle.

45.     Defendants disclosed Mr. Taylor's nonpublic medical information to Ms. Goodwin without the prior consent of Mr. Taylor, who was awake and alert when the helicopter arrived to transport him to Carle.

46.     Defendants identified Ms. Goodwin as Mr. Taylor's emergency contact even though Ms. Taylor was listed as the emergency contact on Mr. Taylor's medical insurance card, and subsequently disclosed Mr. Taylor's nonpublic medical information to Ms. Goodwin, instead of immediately contacting Ms. Taylor.

47.     Throughout his brief stay at Carle on June 22 and June 23, 2003, Ms. Goodwin was kept informed by Defendants of Mr. Taylor's health status and prognosis, but Ms. Taylor was not contacted at all to consent to any life saving procedures nor did Mr. Taylor give his consent to have his nonpublic medical information disclosed to Ms. Goodwin or to anyone.

48.     Although Mr. Taylor had an interest in obtaining emergency medical care and treatment, disclosure of his personal confidential medical information was only warranted for those who had a legitimate interest in Mr. Taylor's health.

49.     Ms. Goodwin, who was a close of friend of Mr. Taylor, did not have a legitimate interest in Mr. Taylor's health and certainly did not have a greater interest than Ms. Taylor, Mr. Taylor's mother.

50.     Defendants breached the physician-patient privilege they had with Mr. Taylor, and Ms. Goodwin induced them to do so by misrepresenting her relationship with Mr. Taylor.

51.     As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered and continues to suffer severe emotional distress, anxiety, anguish and pain and suffering from the loss of her only child for which she seeks compensation in an amount to be determined at trial.

52.     As a direct and proximate result of Defendants' actions, omissions and/or disclosures, Plaintiff has suffered extreme mental and emotional injury and the loss of companionship, affection, counsel and society of her only child.

## Second Claim for Relief
## Intentional and/or Negligent Infliction of Severe Emotional Distress

53. Plaintiff hereby realleges and incorporates by reference as if fully set forth herein the allegations of paragraphs 1 through 52 above.

54. Defendants, through the actions described herein, have engaged in reckless conduct with the intent of causing Plaintiff Willetta Taylor severe emotional distress by failing to contact her when decedent Lloyd Taylor was admitted to Carle despite their knowledge that Plaintiff was the emergency contact person.

55. Defendants, through the actions described herein, have engaged in reckless conduct with the intent of causing Plaintiff Willetta Taylor severe emotional distress by failing to return Mr. Taylor's amputated leg when the rest of his body was returned to Dayton, Ohio for his funeral and burial.

56. Defendants' acts and omissions, as described herein, were extreme and outrageous.

57. Defendants' violation of the physician-patient privilege rises to the level of outrageous conduct sufficient to find intentional and/or negligent infliction of emotional distress in that Plaintiff Willetta Taylor suffered severe and debilitating emotional injury. Such emotional injury rendered her unable to adequately cope with the mental distress engendered by the circumstances surrounding the loss of her only child.

58. As a direct and proximate result of Defendants' intentional and/or negligent infliction of emotional distress described herein, Plaintiff has suffered, and continues to suffer, severe and lasting emotional distress that naturally flowed from Defendants' actions and omissions and which consists of the anxiety, anguish, and pain and suffering from the loss of her child for which she seeks compensation in an amount to be determined at trial.

## Third Claim for Relief

## Lack of Informed Consent

59. Plaintiff hereby realleges and incorporates by reference as if fully set forth herein the allegations of paragraphs 1 through 58 above.

60. Mr. Taylor was awake and alert when the helicopter arrived to transport him to Carle.

61. Mr. Taylor was soon transported from the emergency room to the operating room for ongoing resuscitative efforts.

62.     Mr. Taylor also underwent an immediate amputation of his right leg, which was performed by Dr. Packard after he discussed the situation with Dr. Dodson.

63.     After the amputation procedure, Mr. Taylor sustained a cardiac arrest in the operating room and ongoing resuscitative efforts were made after the completion of the amputation of Mr. Taylor's lower right leg.

64.     Defendants failed to obtain an informed consent from Mr. Taylor prior to performing the immediate amputation of his right leg.

65.     As a direct and proximate result of Defendants' failure to obtain Mr. Taylor's informed consent as described herein, Plaintiff has suffered, and continues to suffer, severe and lasting emotional distress that naturally flowed from Defendants' actions and omissions and which consists of the anxiety, anguish, and pain and suffering from the loss of her child for which she seeks compensation in an amount to be determined at trial.

## Fourth Claim for Relief
## Assault/Battery

66.     Plaintiff hereby realleges and incorporates by reference as if fully set forth herein the allegations of paragraphs 1 through 65 above.

67.     On or about June 22 and June 23, 2003, Defendant doctors and/or medical practitioners acted recklessly, maliciously, wrongfully and put Lloyd Taylor in reasonable apprehension of an immediate battery and engaged in the harmful and offensive touching of Mr. Taylor's person when they amputated his lower right leg without first obtaining and/or verifying his informed consent or that of his emergency contact, Plaintiff Willetta Taylor

68.     Defendants are liable for the assault and battery of Mr. Taylor's person.

69.     As a direct and proximate result of said assault and battery, decedent Taylor and suffered pain, injury, loss of life, emotional distress, anxiety, anguish, humiliation and other incidental and consequential damages and expenses, all to Plaintiff Willetta Taylor's damages in an amount according to proof and on behalf of Mr. Taylor's estate.

## Fifth Claim For Relief – Loss of Consortium

70.     Plaintiffs hereby reallege and incorporate by reference the allegations in paragraphs 1 through 69 of the Complaint.

71.     The negligent and/or intentional acts or omissions of Defendants directly and proximately caused injury to Mr. Taylor's mother, Plaintiff Willetta Taylor.

7

72.   As a direct and proximate result of Defendants' negligence and/or intentional acts, Mr. Taylor's mother, Plaintiff Willetta Taylor was limited in her ability to receive her only child's affection, society, comfort and support, to which Plaintiff is entitled to and seeks relief for.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court:

A.   Award to Plaintiff, individually and on behalf of decedent Lloyd Taylor's estate, compensatory damages for the mental and emotional distress and pain and suffering that she has experienced and endured as a result of Defendants' conduct in an amount to be determined at trial;

B.   Award Plaintiff punitive damages for Defendants' reckless and unauthorized disclosure of decedent Taylor's nonpublic medical information in an amount to be determined at trial;

C.   Award Plaintiff damages for her loss of consortium, pain and suffering;

D.   Award Plaintiff the costs incurred in this action and reasonable attorney's fees;

E.   Grant such further and additional equitable and/or general relief as may to this Court seems just and proper.

### JURY DEMAND

Plaintiff demands a jury to hear and decide all issues of fact.

Respectfully Submitted,

 /s/ James R. Greene, III
James R. Greene, III   #0034267
Trial Attorney for Plaintiff
Valerie L. Colbert     #0074075
Co-counsel for Plaintiff
James R. Greene, III & Associates
Liberty Tower, Suite 900
120 West Second Street
Dayton, Ohio 45402
(937) 225-3991

8

CERTIFICATE OF SERVICE

      I, the undersigned, do hereby certify that the foregoing First Amended Complaint for Money Damages With Jury Demand was served upon Stephen L. Corn, counsel for Defendants, via the Court's electronic filing system on this 20th day of June, 2005.


          /s/ James R. Greene, III
         James R. Greene, III & Associates